United States District Court
District of Massachusetts

```
_____
                               )
WALTER RAPOSO and JOSEPH       )
MINGOLLA, on behalf of         )
themselves and all others      )
similarly situated,            )
                               )
          Plaintiffs,          )      Civil Action No.
                               )      11-11943-NMG
          v.                   )
                               )
GARELICK FARMS, LLC,           )
                               )
          Defendant.           )
_____    )
```

## MEMORANDUM & ORDER

GORTON, J.

Plaintiffs Walter Raposo and Joseph Mingolla ("plaintiffs") are former delivery drivers for defendant Garelick Farms, LLC ("defendant" or "Garelick"), a dairy distribution business. Plaintiffs claim that Garelick failed to pay them full hourly wages due to its policies of 1) automatically deducting from computed time worked 30 minutes per shift for unpaid meal breaks and 2) restricting the location and nature of those breaks.

Pending before the Court are cross-motions for summary judgment, plaintiffs' motion to strike a declaration submitted by defendant in support of its motion and a joint motion to continue the trial scheduled for July 7, 2014.

## I.  __Background__

Garelick is a major dairy provider that employs truck drivers to deliver its products to customers.  It is registered with the United States Department of Transportation as a motor carrier.  Plaintiffs are former delivery drivers for Garelick. Walter Raposo ("Raposo") worked for Garelick as a driver between 2005 and 2011.  Joseph Mingolla ("Mingolla") worked for Garelick as a driver from 1985 until 2001 and from 2007 until 2011 when he was promoted to a supervisory role.  Both plaintiffs were based at Garelick's facility in Franklin, Massachusetts. Garelick also maintains a delivery facility in Lynn, Massachusetts.

During plaintiffs' tenure, Garelick allowed delivery drivers to take two, paid 15-minute breaks and one, unpaid 30-minute meal break during each six-hour shift.  It paid its drivers an hourly wage and an overtime rate for hours worked in excess of 40 hours per week but automatically deducted 30 minutes of paid time from every shift to account for the unpaid 30-minute meal break.  Plaintiffs contend that they were sometimes unable to take a 30-minute meal break due to productivity requirements imposed by Garelick.

Plaintiffs were able to record their breaks using a program called "XATA".  XATA only recorded a break if the driver entered the proper code into the system.  Drivers affiliated with the

Lynn facility were required to record meal breaks using XATA whereas drivers at the Franklin facility were only encouraged to do so.  Early in his tenure at Garelick, Raposo did not log his breaks using XATA but began to log his breaks once he was told to do so.  Mingolla admitted that it is possible that there were times that he took a break but forgot to record it.

Garelick used XATA to record certain information, including driving time, start and stop time, routes, miles per gallon, idling time, speed, use of cruise control and the number of stops made by a driver.  It told drivers which routes to take each day and reviewed drivers' routes on a daily basis to ensure that they were dispatched efficiently.  It generally did not use XATA to check if drivers were taking unpaid meal breaks.

XATA and payroll records indicate that, during some shifts, plaintiffs logged fewer than 30 minutes for meal breaks and yet had 30 minutes of pay deducted from their paychecks.  For instance, Raposo logged meal breaks of less than 30 minutes or did not log meal breaks at all on at least 16 occasions between July 16, 2009 and July 25, 2011 and yet had on half hour worth of pay deducted from his paycheck for each of those shifts.  Mingolla logged meal breaks of fewer than 30 minutes on more than 30 occasions but Garelick deducted 30 minutes from his work time with respect to those shifts.

The parties dispute whether plaintiffs were required or merely encouraged to comply with certain restrictions on the location and nature of meal breaks.[1]  Scott Brown ("Brown"), who held a supervisory position at the Franklin facility during plaintiffs' tenure and was one of Garelick's Fed. R. Civ. P. 30(b)(6) designees, explained that Garelick asks drivers to take breaks "somewhere within" their routes which he defined as deviating no more than five to ten miles from their planned route.  He added that if Garelick management saw that a driver went "completely out of route in excess of where he should be", they would "question it" and "challenge him on what the reasoning was to go that route."

Plaintiffs also submitted a document that was signed by Raposo titled "Dean Foods Driver's Security Policy" ("the Security Policy") that provides, <u>inter alia</u>, that drivers should "try to keep vehicle in site (sic) when parked for delivery, gas, or for meals."  Brown acknowledged that the Security Policy was in effect as of 2008 and was not withdrawn during his tenure.  He noted that he had never "re-communicated" that guideline to drivers and did not recall requiring drivers to

---

[1] Plaintiffs' Statement of Material Facts refers to policies at both of Garelick's facilities.  Because plaintiffs were based at the Franklin facility, evidence of practices and policies at the Lynn facility is irrelevant to their claims and will not be considered.

sign any statement agreeing to keep their trucks within sight during their breaks.

## II.  **Procedural History**

Raposo filed a class-action complaint in the Massachusetts Superior Court for Norfolk County in September, 2011.  In November, 2011, Garelick removed the case to this Court and shortly thereafter moved to dismiss.  In response, plaintiffs filed an Amended Complaint in December, 2011, in which Joseph Mingolla was added as a named plaintiff.  In their Amended Complaint plaintiffs allege that Garelick 1) failed to pay wages in violation of M.G.L. ch. 149 § 150 and 2) has been unjustly enriched by its failure to pay proper wages in violation of state common law.

In April, 2012, plaintiffs moved for leave to file a Second Amended Complaint, seeking to assert two new claims against Garelick and in September, 2012, defendant moved to strike plaintiffs' class claims.  Shortly thereafter, the Court denied both motions.  The Court later denied plaintiffs' motion to certify a class comprised of all individuals who have worked as delivery drivers for Garelick Farms in Massachusetts since September 27, 2005, finding that their claims were not amenable to class-wide resolution.

**III.** **Cross-Motions for Summary Judgment and Motion to Strike**

Plaintiffs claim that defendant has knowingly and willfully failed to pay its truck drivers all wages due to them in violation of the Massachusetts Wages Act, M.G.L. ch. 149, §§ 148 and 150, and has been unjustly enriched by knowingly benefiting from plaintiffs' uncompensated work during meal breaks. They assert two theories of liability. First, they claim that Garelick owes them unpaid wages based upon its policy of automatically deducting 30 minutes from their paychecks even when they did not log a full 30 minute meal break ("the uncompensated time theory"). Second, they claim that the restrictions Garelick placed upon their meal breaks rendered the breaks compensable even when they recorded taking a full 30-minute break ("the on-duty theory"). The restrictions at issue are Garelick's purported policies requiring drivers 1) to travel no more than five to ten miles off route in order to take a meal break and 2) to keep their vehicles in sight during breaks.

The parties have filed cross-motions for summary judgment. Defendant asserts that plaintiffs' claims are preempted by federal statute and that, in any event, they cannot prove their on-duty theory based upon the undisputed facts in the summary judgment record. Plaintiffs urge the Court to find that defendant violated the Wages Act and was unjustly enriched such

that the only issue to be determined by the jury is the amount
of damages to which they are entitled.

### A.   Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d
816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc.,
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the
suit under the governing law." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant
or unnecessary will not be counted." Id.  A genuine issue of
material fact exists where the evidence with respect to the
material fact in dispute "is such that a reasonable jury could
return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts
to the non-moving party to set forth specific facts showing that
there is a genuine, triable issue. Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all

reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  The non-moving party may not, however, rest merely upon "conclusory allegations, improbable inferences and unsupported speculation." <u>Feliciano de la Cruz</u> v. <u>El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000).

The same basic standard applies to cross-motions for summary judgment. <u>Adria Int'l Group, Inc.</u> v. <u>Ferre Dev., Inc.</u>, 241 F.3d 103, 107 (1st Cir. 2001).  A party will prevail on a cross-motion for summary judgment only if it can establish that it is entitled to judgment as a matter of law based upon facts as to which there is no genuine dispute when all inferences are drawn in favor of its opponent.

**B.   Preemption by the Federal Aviation Administration Authorization Act**

Defendant contends that it is entitled to summary judgment in its favor because plaintiffs' claims are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501.

**1.   Legal Standard**

The FAAAA "broadly preempts" state laws that relate to prices, routes or services of any motor carrier with respect to the transportation of property. <u>Martins</u> v. <u>3PD, Inc.</u>, No. 11-11313-DPW, 2013 WL 1320454, at *10 (D. Mass. Mar. 28, 2013).

-8-

With respect to the transportation of goods and other property

by motor carriers, the FAAAA provides that states

> may not enact or enforce a law, regulation, or other
> provision having the force and effect of law related
> to a price, route, or service of any motor carrier ...
> with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).  Congress included such provisions to

ensure that the prices, routes and services of transportation

providers reflect "maximum reliance on competitive market

forces" to encourage "efficiency, innovation, and low prices".

Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 371 (2008)

(quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374,

378 (1992)) (internal quotation marks omitted).  In light of

that goal, the Supreme Court has set forth four broad principles

that govern FAAAA pre-emption:

> (1) state enforcement actions having a connection
> with, or reference to, carrier rates, routes or
> services are pre-empted; (2) ... such pre-emption may
> occur even if a state law's effect on rates, routes,
> or services is only indirect; (3) ... it makes no
> difference whether a state law is consistent or
> inconsistent with federal regulation; and (4) ... pre-
> emption occurs at least where state laws have a
> "significant impact" related to Congress' deregulatory
> and pre-emption related objectives.

Id. at 370-71 (quoting Morales, 504 U.S. at 378) (internal

quotation marks omitted).  It cautioned recently, however, that

"the breadth of the words 'related to' does not mean the sky is

the limit." Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct.

1769, 1778 (2013).

The First Circuit Court of Appeals has held that the FAAAA preempts the Massachusetts Tips Act, M.G.L. ch. 149, § 152A. DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 87-90 (1st Cir. 2011). In so holding, it acknowledged that the Tips Act, like the Wages Act, is aimed at protecting employee compensation rather than regulating transportation. Id. at 87. It explained that it did not understand the FAAAA to preempt wage laws, however, and distinguished the Tips Act on the grounds that

> the tips law does more than simply regulate the employment relationship between [employees and the employer airlines]; ... the tips law has a direct connection to air carrier prices and services and can fairly be said to regulate both.

Id.

Massachusetts courts and the federal courts of this District have, moreover, rejected uniformly the argument that the FAAAA preempts § 148B of the Wages Act, which governs whether a worker is classified as an employee and therefore entitled to the protection of § 148 and other provisions of the Wages Act. They have reasoned that Congress did not intend to exempt motor carriers from generally applicable state employment laws that have, at most, an attenuated effect on prices and services. See, e.g., Mass. Delivery Ass'n v. Coakley, No. 10-11521-DJC, 2013 WL 5441726, at *8-9 (D. Mass. Sept. 26, 2013) ("Put simply, in drafting the FAAAA, Congress did not draft a blank check to the trucking industry protecting it from any

-10-

state regulation that increases the cost of doing business."); Schwann v. FedEx Ground Package Sys., Inc., No. 11-11094-RGS, 2013 WL 3353776, at *2-4 (D. Mass. July 3, 2013); Martins, 2013 WL 1320454, at *12-13; Oliveira v. Advanced Delivery Sys., Inc., No. 091311, 2010 WL 4071360, at *2-4 (Mass. Super. Ct. July 16, 2010).

## 2. Application

The FAAAA does not preempt plaintiffs' claims to be compensated for shortened or restricted break time and the Court therefore declines to enter summary judgment on that ground.

The Court is unconvinced that the plaintiffs' claims should be treated as an action to enforce the Massachusetts Meal Break statute, M.G.L. ch. 149, § 100, merely because it involves automatic meal break deductions and restrictions on meal breaks. Plaintiffs seek recovery of unpaid wages under § 148 and do not seek to enforce § 100, which in any event does not provide a private right of action. This case is distinguishable from meal break claims brought under California Labor Code § 226.6, which requires employers to provide breaks at certain times and imposes a penalty that may exceed lost wages for failure to provide such breaks. See, e.g., Dilts v. Penske Logistics LLC, 819 F. Supp. 2d 1109, 1112, 1118-22 (S.D. Cal. 2011) (finding missed meal break claim preempted where the parties agreed that

the applicable laws requiring certain breaks at certain times affected a shipping company's routes, services and prices).

Moreoever, as with the rule distinguishing between employees and independent contractors, § 148 is a generally applicable state law that regulates Garelick in its capacity as an employer rather than as a motor carrier.  Requiring Garelick to pay its delivery drivers for time worked during their meal breaks instead of deducting 30 minutes worth of pay per shift from their paychecks regardless of whether they took a break undoubtedly increases the cost of doing business. See Mass. Delivery Ass'n, 2013 WL 5441726, at *8-9.  Nevertheless, such a requirement has at most an attenuated relationship to Garelick's prices, due to those increased costs, and no discernible relationship to its routes or services. See Rowe, 552 U.S. at 370-71; DiFiore, 646 F.3d at 87-90. Therefore, plaintiffs' uncompensated time theory based upon a violation of § 148 is not preempted by the FAAAA.

With respect to plaintiffs' on-duty theory, the Court understands plaintiffs to contend (and agrees) that the mere fact that they were (allegedly) required to keep their vehicles in sight and take breaks within five to ten miles of their routes rendered any unpaid break time compensable, regardless of their route and the circumstances of the break taken on any particular day.  Their claims, in other words, do not impinge

upon Garelick's ability to assign drivers to particular routes and therefore are not preempted by the FAAAA.

Moreover, the Court discounts defendant's argument that declining to find the on-duty theory preempted will effectively convert all driver meal breaks into working time and thereby expose defendant to liability in an enforcement action brought by the Massachusetts Attorney General under the Meal Break Statute. That possibility is speculative and, in any event, defendant would be free to contend that such an action is barred by the FAAAA.

Finally, because defendant argues that the claims under the Wages Act and for unjust enrichment are preempted for the same reasons, the Court will decline to enter summary judgment that either claim is preempted by the FAAAA. It will, moreover, deny plaintiffs' motion to strike the declaration of Keith Murphy because the objected-to statements therein relate to the effects on Garelick's business model of requiring meal breaks at certain times and in certain locations and are mooted by the Court's decision that plaintiffs' claims are not preempted by the FAAAA.

### C. Unpaid Work During Meal Breaks

Plaintiffs move for summary judgment on the issue of whether they logged meal breaks of fewer than 30 minutes for which they were not paid. They assert that there can be no dispute that, based on XATA and payroll records, they are

-13-

entitled to collect unpaid wages and therefore the only issue for the jury is the amount of damages.

Defendant makes three arguments in response. First, it contends that the XATA records are unreliable and therefore the amount of time for which plaintiffs were not paid is in dispute. It notes that plaintiffs have admitted that it is possible that they occasionally did not log their breaks. Defendant overstates the evidence of unreliability as it appears from the record that plaintiffs are fairly confident that, on almost all occasions, they logged the breaks they took. Nevertheless, given the possibility of unintentional human error and the fact that the issue of liability for nonpayment is closely tied to damages, the Court concludes that the issue of the accuracy of XATA records is better left for the jury to resolve at trial.

Second, with respect to plaintiffs' unjust enrichment claim, defendant suggests that it did not know that plaintiffs were logging meal breaks of fewer than 30 minutes and therefore the issue of whether it knew that it was benefiting from under-compensating plaintiffs is in dispute. See Stevens v. Thacker, 550 F. Supp. 2d 161, 164 (D. Mass. 2008) (describing that a plaintiff claiming unjust enrichment must prove that the defendant knew that it had received a benefit and inequitably retained it (citing 12 Williston on Contracts § 1479)). It points to evidence that it did not examine meal break records

-14-

except in exceptional circumstances.  There is other evidence, however, that supports plaintiffs' theory that Garelick avoided such knowledge.  For instance, Mingolla testified that he became aware as a supervisor that Garelick declined to rely on XATA records to add unused break time to paychecks because it was easier to have a bright-line policy of unpaid 30-minute deductions.  The Court concludes that there is a genuine issue of material fact as to Garelick's knowledge that precludes summary judgment.

Third, defendant maintains that plaintiffs' claims of non-payment on certain dates are barred because Garelick is entitled to offset its gratuitous payment of overtime and for two daily 15-minute breaks.  See M.G.L. c. 149, § 150 (explaining that a "valid set-off" against wages is a defense to failure to pay wages under § 148).  That argument is meritless.  The Supreme Judicial Court recently explained that it understands "valid set-off" in § 150 to refer to "clear and established debt[s] owed to the employer by the employee." Somers v. Converged Access, Inc., 454 Mass. 582, 593, 911 N.E.2d 739, 750 (2009).  Overtime pay and paid breaks are not such debts.

Other cases cited by defendant have no application to this case.  The decision in Rudy v. City of Lowell, 777 F. Supp. 2d 255 (D. Mass. 2011), concerns the interplay of complicated provisions of the Fair Labor Standards Act and collective

-15-

bargaining agreements with respect to overtime and is not controlling on these facts. Similarly, <u>Swift</u> v. <u>Autozone, Inc.</u>, 441 Mass. 443, 806 N.E.2d 95 (2004), addresses the narrow and inapposite question of whether an employer can avoid paying double overtime on Sundays.

In sum, the Court declines to enter summary judgment as to whether or not defendant is liable to pay plaintiffs for missed or shortened lunch breaks on the specific dates identified in the record.

### D. Restrictions on Meal Breaks

Both parties move for summary judgment with respect to whether certain restrictions require Garelick to treat plaintiffs' meal breaks as compensable working time. They agree that the applicable standard is a Massachusetts Division of Occupational Safety regulation that defines "working time" as

> all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site, and any time worked before or beyond the end of the normal shift to complete the work. <u>Working time does not include meal times during which an employee is relieved of all work-related duties.</u>

455 C.M.R. § 2.01 (emphasis added). Thus, the dispute centers on whether plaintiffs were "relieved of all work-related duties" during their meal breaks.

Defendant contends that it is entitled to summary judgment because it merely requested that drivers "try" to keep their

-16-

vehicles within sight during their unpaid meal breaks and to
travel no more than five to ten miles off route to take a break.
It suggests that requests cannot, as a matter of law, be
considered work-related duties and that, at most, any
restrictions were analogous to those placed on "on call"
employees reachable by pager but otherwise free to use their
time for their own purposes. See Lisa C. Price, Legal Counsel,
Massachusetts Division of Occupational Safety Opinion Letter MW-
2002-023: On-Call With a Pager (Aug. 12, 2002) (explaining
"general rule" that offsite on-call time is not compensable).

Plaintiffs contest that account.  First, they maintain that
the term "all work-related duties" has a plain meaning that
should be construed strictly in light of the purpose of the
Wages Act to protect employees' right to be paid full wages.
Second, they contend that they are "on duty" during their meal
breaks according to federal truck driver guidelines which
provide that

> [i]n order for time to be considered off-duty, you must be
> relieved of all duty and responsibility for performing
> work.  You must be free to pursue activities of your own
> choosing and be able to leave the place where your vehicle
> is parked.

Federal Motor Carrier Safety Administration, Interstate Truck
Driver's Guide to Hours of Service, p. 8 (Feb. 2013).  Third,
plaintiffs note that one of Garelick's Fed. R. Civ. P. 30(b)(6)
designees, Keith Murphy, admitted that drivers are not relieved

of responsibility for their vehicles during their meal breaks
and are therefore considered "on duty" for the purposes of
federal regulations.  Plaintiffs therefore assert that there is
no dispute that they performed at least some work-related duties
during their meal breaks.

The Court disagrees with plaintiffs that the term "all
work-related duties" has a plain meaning and looks to analogous
federal law for guidance. See Goodrow v. Lane Bryant, Inc., 432
Mass. 165, 170, 732 N.E.2d 289, 294 (2000) (explaining that
courts may look to interpretations of analogous federal statutes
when a state statute does not define a term adequately and the
legislative history is inconclusive).  At this stage, the Court
accords little weight to the Federal Motor Carrier Safety
Administration guidelines.  Such informal guidelines are
entitled to at most Skidmore deference, see Christensen v.
Harris County, 529 U.S. 576, 587 (2000), and the Court does not
find these particular guidelines persuasive given that the
purpose of the regulations they interpret is to limit driver
fatigue rather than to determine compensation, see Hours of
Service of Drivers, 76 Fed. Reg. 81,134 (Dec. 27, 2011) (to be
codified at 49 C.F.R. Part 385 et al.).  Moreover, the First
Circuit has explained that the Fair Labor Standards Act
("FLSA"), 29 U.S.C. §§ 201-211, is analogous to the
Massachusetts minimum wage and overtime laws. Cash v. Cycle

Craft Co., Inc., 508 F.3d 680, 686 (1st Cir. 2007).  A

Department of Labor regulation, 29 C.F.R. § 785.19, that defines

non-compensable "bona fide meal breaks" is particularly apt.

While the First Circuit has yet to address the applicable

standard for bona fide meal breaks under the FLSA, this Court

and others in this District have held that employees perform

compensable work during their meal periods if they

"predominantly spend[] the time performing activities for the

employer's benefit." Harris v. City of Bos., 253 F. Supp. 2d

136, 142-43 (D. Mass. 2003); see also Botero v. Commonwealth

Limo. Serv., Inc., No. 12-10428-NMG, 2013 WL 3929785, at *7 (D.

Mass. July 23, 2013).  The inquiry is "highly individualized and

fact-based," Pabst v. Okla. Gas & Elec. Co., 228 F.3d 1128, 1132

(10th Cir. 2000), and relevant factors include

> limitations and restrictions placed upon employees,
> the extent to which those restrictions benefit the
> employer, the duties for which the employee is held
> responsible during the meal period, and the frequency
> in which meal periods are interrupted.

Bernard v. IBP, Inc. of Neb., 154 F.3d 259, 266 (5th Cir. 1998).

Courts have generally held that the mere fact that an employee

is "on-call" and must remain in a certain area does not convert

a meal break into work time. See, e.g., Barefield v. Vill. of

Winnetka, 81 F.3d 704, 710 (7th Cir. 1996).  Where, however,

employees are required to provide certain services, even

passively, their meal breaks are considered work time. See Reich

v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 65 (2d Cir. 1997)
(finding requirement that employees remain at outdoor work site
to maintain the safety and security of the site and equipment
was for the benefit of the employer even though employees played
only a passive role in maintaining safety and security).

The Court is unable to determine on this record whether the
directives to travel no more than five or ten miles off route
and to "try" to keep vehicles within sight rendered meal breaks
compensable working time.  Plaintiffs rely upon admissions by
Garelick's representatives and the Security Policy signed by
Raposo but offer no evidence of whether the directive to try to
keep their vehicles in sight changed their conduct during breaks
or was instead a commonsense safety precaution that they would
have followed regardless of Garelick's policy.  On the other
hand, the Court does not credit defendant's argument that the
fact that it has stated such policies in permissive rather than
mandatory terms precludes plaintiffs from proving their case.
In short, it is not clear on this factual record whether the
restrictions on meal breaks render those breaks compensable.
Summary judgment for either party is therefore inappropriate.

**IV.  Joint Motion for Extension of Time**

The parties have jointly moved to continue the trial
scheduled for July 7, 2014, in light of the pending summary
judgment motions.  Given that this Memorandum and Order disposes

of the subject motions, the Court will deny the motion to
continue.

**ORDER**

For the foregoing reasons,

1)  defendant's Motion for Summary Judgment (Docket No.
    92) is **DENIED**;

2)  plaintiffs' Cross-Motion for Summary Judgment (Docket
    No. 96) is **DENIED**;

3)  plaintiffs' Motion to Strike the Declaration of Keith
    Murphy (Docket No. 99) is **DENIED AS MOOT**; and

4)  the Joint Motion for Extension of Time (Docket No.
    110) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 2, 2014